**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Jessco, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.: 2:08-1759-PMD |
| v. | ) | |
| | ) | |
| Builders Mutual Insurance Co., and | ) | **ORDER** |
| Arrowood Indemnity Co., | ) | |
| | ) | |
| Defendants. | ) | |
| —————————————————— | ) | |
| | ) | |
| Builders Mutual Insurance Co., | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Jessco, Inc., | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| —————————————————— | ) | |
| | ) | |
| Arrowood Indemnity Co., | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Jessco, Inc., | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| —————————————————— | ) | |

This matter is before the court upon Defendant Builders Mutual Insurance Co.'s ("Defendant") motion to alter or amend the court's September 22, 2009 order and Plaintiff Jessco, Inc.'s ("Jessco") motion for a determination and award of damages.

## BACKGROUND

In the underlying dispute, the Mazycks, as homeowners, sued the builder of their home, Jessco, Inc., for defects, deficiencies, and other problems related to the construction of their home. Those parties arbitrated their dispute, and the arbitrator found Jessco liable to the Mazycks for approximately $54,863. Jessco then initiated a declaratory judgment action in this court against its two insurers, Defendant and Arrowood Indemnity Co., asking the court to declare whether or not their policies provided coverage for the Mazycks' claims.[1] This court determined that coverage existed only for the Mazycks' claims for damages based on the flooding, as the arbitrator determined from the testimony and evidence before him that the flooding resulted from the yards' exposure to an overdeveloped wetland behind the Mazycks' house.

## STANDARD OF REVIEW

Reconsideration of a judgment is an extraordinary remedy which should be used sparingly. *Pacific Ins. Co. v. American Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). A motion to alter or amend pursuant to Rule 59(e) may be granted for three reasons: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Id.* Motions to reconsider may not be used to initiate arguments or legal theories that the proponent had the ability to address prior to the judgment. *Id.*

## ANALYSIS

### I. Defendant's Motion to Alter or Amend the Court's September 22, 2009 Order

Defendant asks the court to alter and amend its September 22, 2009 order in this matter because, the "decision was, inter alia, based on a misinterpretation of the facts, a failure to apply

---

[1] Arrowood Indemnity Co. has since reached a settlement agreement with Jessco and is no longer a party to this case.

a designated CGL policy endorsement, and a misconstruction of the applicable law," (Def. Mot. to Amend at 2). Defendant specifically asks the court to address the effect of the CG 22 94 endorsement to the commercial general liability ("CGL") policy it issued Jessco, which purports to eliminate the subcontractor's exception to the policy's "your work" exclusion, and to correct its "misapprehension" of the flooding of the Mazycks' property.

The CG 22 94 endorsement to the CGL policy issued to Jessco—entitled "EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF"— replaces "Exclusion l. of Section I – Coverage A – Bodily Injury And Property Damage Liability" with the following language:

> **2.** **Exclusions**
>
> This insurance does not apply to:
>
> **I.** **Damage To Your Work**
>
>> "Property damage to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

(Def. Mot. to Amend Ex. B.) The policy defines "your work" in relevant part as "work or operations performed by you or on your behalf." (Def. Mot. for Summ. J. Ex. C. at 32.) This endorsement seeks to exclude from the CGL policy's coverage any property damage to Jessco's own work or to the work of subcontractors hired by it when the damage to the work resulted from the work itself. Essentially, the policy seeks to exclude from its coverage any self-inflicted wounds, and Defendant believes the endorsement "acts to completely and totally eliminate any liability coverage to Jessco for the Mazycks' claims." (Def. Mot. to Amend at 8.) According to Defendant, its policy cannot provide coverage under its amended language because "[t]he only evidence in the record shows all of the construction work undertaken on Jessco's behalf at the Mazyck Residence was done by Jessco's subcontractors," (*id*), and it "does not owe Jessco any legal defense and/or indemnity . . . for any of the Mazycks' defective construction/faulty

workmanship claims which were undertaken for Jessco by any of its subcontractors." (*Id.* at 18.) To further support this argument, Defendant synopsizes a Florida state court decision, a Texas state court decision, several commentaries from secondary sources, and a "Frequently Asked Question" section from a web site, which collectively take the position that CGL policies with the CG 22 94 endorsement no longer provide coverage to an insured general contractor for claims of faulty workmanship performed by its subcontractors. While these authorities may explain the intended purpose of this particular endorsement, Defendant has not explained the relevance of that intended purpose in this case.

Essentially, Defendant asks the court to find for it by focusing solely on whose work suffered damages, but the court must also analyze the cause of the damages, for the policy only excludes from its coverage property damage to work performed by Jessco's subcontractors when that damage arises out of the work itself. Because the property damage to the Mazycks' residence resulted from its exposure to an overdeveloped wetland adjacent to it—a problem created by neither Jessco nor its subcontractors—the court did not find the endorsement applicable to this case in its original order, nor does it find so now. The court may have created confusion by citing to the South Carolina Supreme Court's decision in *Auto Owners Ins. Co. v. Newman*, 385 S.C. 187, 684 S.E.2d 541 (2009), for supporting authority that "coverage does exist for the claims related to flooding asserted against Jessco," (Order at 13), but the court relied on this decision as support for the legal finding that water intrusion can constitute an "occurrence" under CGL policies. It did not rely on the decision, nor could it have, to find that the CG 22 94 endorsement does not exclude coverage.

Pursuant to its policy, Builders Mutual agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to

which this insurance applies." The policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of the use of that property," and it provides that "[t]he insurance applies to . . . 'property damage' only if . . . the 'property damage' is caused by an occurrence that takes place in the 'coverage territory.'" As discussed in this court's original order, Builders Mutual's policy defines "occurrence" as unexpected or unintended property damage caused by "continuous or repeated exposure to substantially the same general harmful conditions."

The court stands by its finding that the flooding of the Mazycks' yard constitutes "property damage," as defined by the CGL policy. *See Horry County v. Ins. Reserve Fund*, 344 S.C. 493, 500, 544 S.E.2d 637, 641 (Ct. App. 2001) (finding that flooding falls "within the ordinary meaning of physical injury to property").[2] The retained water on their lot has caused them to lose the use of their yard at times, as well as caused water damage to their garage. Furthermore, the flooding is caused by an "occurrence," as defined by the CGL policy, because it is the result of continuous and repeated exposure to substantially the same harmful condition, the adjacent wetland. Since the court finds that the overdeveloped wetland adjacent to the Mazycks' property causes an "accident" constituting an "occurrence," it is subject to coverage under the policy.

Lastly, Defendant argues that because the arbitrator found Jessco's work not to be the legal proximate cause of the flooding of the Mazycks' property, Jessco cannot be held liable to

---

[2] Defendant contends that the court's reliance upon *Horry County v. Insurance Reserve Fund*, 344 S.C. 493, 544 S.E.2d 637 (Ct. App. 2001), was misplaced. It is clear from the court's order that it read *Horry* as support for a single and very narrow proposition—that flooding falls within the ordinary meaning of physical injury to property. The court never stated that it found the facts of that case analogous to this case or that *Horry*'s reasoning dictates the results in this case. Since Defendant did not explain how the court's reliance in this limited respect is "misplaced," the court does not address Defendant's lengthy discussion of the case except to merely assure Defendant that *Horry* did not control its ruling.

the Mazycks under South Carolina law for negligence. The court need not address this argument, although it certainly understands the motivation behind it, because all that matters for purposes of this declaratory judgment action is that the arbitrator found Jessco liable to the Mazycks for $10,000 in damages for flooding and additional re-grading allowance, as the "summary of award" provided by the arbitrator in his original award specifically stated:

> For Glenn and Tracie Mazyck ("Claimants"):
>
> | | | |
> |---|---|---|
> | 1. | Cantley Estimate for repairs | $49,113.90 |
> | 2. | Less disallowed items | (21,250.00) |
> | 3. | **Damages for flooding** and additional re-grading allowance | 10,000.00 |
> | 4. | Revision of sewer line | 7,000.00 |
> | | Total | $44,863.90 |

(Def. Ex. C. at 20) (emphasis added).[3] Since Jessco is obligated to pay the Mazycks $10,000 for damages from flooding, which is a sum that Jessco became legally obligated to pay as property damage to which Builders Mutual's policy applies, the court upholds its finding that coverage does exist for the claims related to flooding asserted against Jessco, and it denies Defendant's motion to alter or amend judgment.

## II.  Plaintiff Jessco, Inc.'s Motion for Determination and Award of Damages

Jessco moves the court to determine the award of damages it is owed in this action based on the court's finding that coverage exists under Builders Mutual's policy. First, Jessco asks the court to find that it is entitled to be reimbursed from Builders Mutual in the amount of $10,000 related to damages resulting from flooding. Since the arbitrator found Jessco liable to the Mazycks for that amount and since the court has determined that Builders Mutual's policy covers those damages, the court finds Jessco is entitled to that award. More contested is Jessco's request for costs and attorneys' fees associated with bringing this declaratory judgment action, as well as

---

[3] The arbitrator subsequently incorporated this original award into his modified award. (Def. Ex. E. at 5.)

defending the underlying action, and its request for punitive damages based on Builders Mutual's alleged bad faith denial of coverage and refusal to defend.

Citing *Hegler v. Gulf Insurance Co.*, 270 S.C. 548, 243 S.E.2d 443 (1978) (finding that an insured is entitled to recover attorney's fees incurred in defending a declaratory judgment action in which it prevails) and *First Financial Insurance Co. v. Sea Island Sport Fishing Society*, Inc., 327 S.C. 12, 490 S.E.2d 257 (1997) (declining to overrule *Hegler*), Jessco asks the court to award it $68,695.20 in attorneys' fees and costs, which reflects the amount of costs it incurred after Defendant denied it coverage in the Mazycks' suit prior to the arbitration of the underlying action and up to and including the costs associated with this declaratory judgment action. Defendant contends that Jessco misinterpreted *First Financial Insurance Co.* and *Hegler* because, in its view, those cases stand for the proposition that a court can award an insured attorney's fees when a declaratory judgment action is initiated by the insurance company, but not when an insured initiates an action to determine coverage. Since Jessco initiated the declaratory judgment action in this case, Defendant does not believe it has to pay the attorneys' fees Jessco incurred in defending the underlying action at arbitration or seeking a determination of coverage under its CGL policy in this court.

In addition to avoiding the absurd policy implications that would result from making such a finding, the court disagrees with Defendant's contention based on the decision rendered in *Hegler*. In that case, the South Carolina Supreme Court stated:

> If the insurer **can force [the insured] into a declaratory judgment proceeding** and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract right mentioned above. Other courts have refused to impose such a burden upon the insured.

*Hegler*, 270 S.C. at 551, 243 S.E.2d at 444–45 (emphasis added). Thus, the court's concern rested on the insurance company's ability to avoid a contractual duty to defend at the expense of the insured by creating the need for a declaratory judgment action, and it did not find that such a concern arises only when the insurance company initiates the declaratory judgment action itself. A contrary ruling would only permit an insurer to deny coverage and remain idle until an insured could no longer wait to file a declaratory judgment action. The *Hegler* decision can hardly be construed to permit such a tactic.

If the court does find that attorneys' fees and costs are recoverable in this case, Defendant asks the court to consider the fact that Jessco only received $10,000 in coverage out of an arbitration award totaling $54,893.90; therefore, Defendant points out that it "prevailed more in its defense of the 'no coverage' position than did Jessco in its 'applicability of coverage' position." (Def. Mem. in Opp. at 20.) Being the case, Defendant asks the court to "slash" the attorneys' fees and costs to reflect the "fair share attributable to Jessco's success" in defending the claims related to flooding. This argument reflects Defendant's misunderstanding of its duty to defend under a contract for insurance.

> 'The duty to defend is separate and distinct from the obligation to pay a judgment rendered against the insured. Although these duties are related in the sense that the duty to defend depends on an initial or apparent potential liability to satisfy the judgment, the duty to defend exists regardless of the insurer's ultimate liability to the insured.'

*USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 654, 661 S.E.2d 791, 796 (2008) (quoting *Sloan Constr. Co. v. Central Nat'l Ins. Co. of Omaha*, 269 S.C. 183, 186–87, 236 S.E.2d 818, 820 (1977) (internal citation omitted)). Since the court found that Defendant's CGL policy with Jessco provided coverage for the claims asserted by the Mazycks related to flooding, Defendant had a contractual duty to defend the entire action asserted against Jessco. Therefore, Defendant's

argument is meritless, and the court grants Jessco's requests for attorneys' fees and costs, which it verified to be $68,695.20. *See Unisun Ins. Co. v. Hertz Rental Corp.*, 312 S.C. 549, 554, 436 S.E.2d 182, 186 (Ct. App. 1993) ("An insurer that breaches its duty to defend and indemnify the insured may be held liable for the expenses the insured incurs in providing for his own defense.").

Next, Jessco believes it is also entitled to recover from Defendant $19,609.96, which is the amount of attorneys' fees and costs awarded to the Mazycks, as the prevailing party, by the arbitrator pursuant to the construction contract between them. Jessco contends that these costs arose from the occurrence of a covered injury, which Jessco is now "legally obligated to pay." Defendant opposes this argument, and it cites to the language of its policy with Jessco for support. The CGL policy issued to Jessco does not apply to "bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." The court agrees with Defendant and denies Jessco's request for liability insurance coverage for the attorneys' fees and costs awarded the Mazycks at arbitration. The arbitrator found that the construction contract between the Mazycks and Jessco provided that the prevailing party be awarded those costs, and since Jessco is obligated to pay that sum by reason of its assumption of liability in its construction contract with the Mazycks, the court denies its request for such an award.

The court also denies Jessco's request for punitive damages. Under South Carolina law, "if an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under the insurance contract, then the insured can recover consequential damages, and the actual damages are not limited by the contract." *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 355 S.C. 614, 618 n.2, 586 S.E.2d 586, 588 n.2 (2003) (citing *Nichols v.*

*State Farm Mut. Auto. Ins. Co.*, 279 S.C. 336, 340, 306 S.E.2d 616, 619 (1983)). To establish such a claim, a plaintiff must prove that "there was no reasonable basis to support the decision of the insurance company." *Varnadore v. Nationwide Mut. Ins. Co.*, 289 S.C. 155, 345 S.E.2d 711, 713–14 (1986). "Furthermore, punitive damages can be recovered if the insured can demonstrate the insurer's actions were willful or in reckless disregard of the insured's rights." *Id.*

Builders Mutual contends that it had reasonable bases by which to contest Jessco's claim for coverage, and the court so finds. It believed that the CG 22 94 endorsement to its policy with Jessco may have effectively excluded coverage under its policy, and such a belief is reasonable in light of the relatively new rebirth of the amended "your work" exclusion and the perplexing state of the law in South Carolina regarding whether or not an alleged claim constitutes an "occurrence" under a contract for insurance. Moreover, Jessco did not notify Builders Mutual of the Mazycks' suit against it until approximately two and a half years after it was filed, and Builders Mutual could have reasonably believed that it no longer had a duty to defend Jessco based on its failure to comply with the notice requirements spelled out in its policy. Lastly, nothing indicates that Builders Mutual acted willful or with reckless disregard in denying Jessco's claim for coverage to warrant an award of punitive damages.

## <u>CONCLUSION</u>

Based on the foregoing, the court **DENIES** Defendant Builder Mutual Insurance Co.'s motion to alter or amend judgment. It is further **ORDERED** that Plaintiff Jessco, Inc. is entitled to a $78,695.20 award from Defendant, which shall bear post-judgment interest at the legal rate.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**January 29, 2010**
**Charleston, SC**